IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

UNITED STATES OF AMERICA,
        Plaintiff,      Case No. CR08-00932-007-PHX-DGC

vs.

MARCO ANTONIO SERRANO,
        Defendant.

MOTION FOR REDUCTION OF SENTENCE
MEMORANDUM OF POINTS AND AUTHORITIES

Comes Now, Defendant, Marco Antonio Serrano, appearing pro se, and respectfully moves this Honorable Court for an Order reducing his sentence, based on the foregoing Memorandum of Points and Authorities, pursuant to 18 U.S.C. § 3582(c)(1)(A).

Dated: 2-28-21        Respectfully submitted,

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE LRCrP 5.4
(Rule Number/Section)

*Marco Serrano*
Marco Antonio Serrano
Reg. No. 88783-008
FCI Victorville II
Post Office Box 3850
Adelanto, CA 92301

Defendant Appearing Pro Se

# MEMORANDUM OF POINTS AND AUTHORITIES

## A. Introduction

When Defendant was sentenced to 22 years in prison, it was anticipated that he'd serve his time under legal, humane conditions. For over one year, however, he's been made to endure illegal and inhumane conditions, which have included the government actually giving him COVID-19. Both objectively and subjectively, the conditions Defendant has endured must be considered "extraordinary and compelling." Given such, as well as his own extraordinary efforts toward rehabilitation, Defendant is an ideal candidate for a sentence reduction.

## B. Facts and Procedural History

On January 15, 2010, the Court sentenced Defendant to 264 months' imprisonment in the custody of the Bureau of Prisons ("BOP"). This 22-year sentence was for offenses committed before Defendant turned 18 years old.

Instantly upon his arrival into BOP custody, Defendant began his self-initiated path toward rehabilitation. In 2011, he earned his GED and went on to complete numerous classes, courses and programs. It's noteworthy that Defendant pursued such rehabilitation at a time when there was no statutory incentive for doing so.

In January 2020, by virtue of the COVID-19 pandemic, a measure began at FCI Victorville II, the facility housing Defendant, which was intended to eliminate the possibility of inmates spreading the virus to other inmates. Newly arriving inmates must first spend at least 21 days in a quarantine unit where they are repeatedly tested before joining general population.

2

And yet throughout 2020, inmates kept getting COVID-19, but not from other inmates. Rather, because many staff members refused to wear a mask and supervisors refused to enforce the same. For this reason, much of 2020 was spent in a lockdown status whereby inmates were forced to spend long periods of time locked in their cells without access to showers, telephones or even fresh air. It was during such time that Defendant began to experience intense anxiety and depression.

In December 2020, Defendant's worst fear became a reality: he contracted COVID-19 from a staff member. Not only was Defendant put through weeks of physical and mental anguish, but he now faces a substantial risk of future harm because of this deadly virus.

After waiting over 30 days since submitting his written request to the Warden, Defendant now moves the Court for a reduction of his sentence.

C. Argument

Under section 3582, the Court may modify Defendant's sentence "after considering the factors set forth in § 3553(a) to the extent applicable" if it finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). This statutory authorization is a limited exception to the general rule that courts "may not correct or modify a prison sentence once it has been imposed." United States v. Penna, 319 F.3d 509, 511 (9th Cir. 2003) (citing 18 U.S.C. § 3582(c)).

District courts have granted compassionate release under circumstances beyond those listed in the Guidelines policy statement. See, e.g., United States v. Regas, 2020 WL 2926457 (D. Nev. June 3, 2020); United States v. Arreola-Bretado, 2020 WL 2535049 (S.D. Cal. May 15, 2020); United States v. Kesoyan, 2020 WL 2039028 (E.D. Cal. April 28, 2020). That is because the policy statement was last substantially amended in November 2016, before section 3582 was amended by the passage of the First Step Act in December 2018. Courts have reasoned that Congress's intent in passing the First Step Act—which allows inmates to move for sentence modification when the BOP refuses to do so—was to entrust district courts to consider a variety of circumstances that could be extraordinary and compelling. See Arreola-Bretado, supra, at *2.

Defendant has exhausted administrative remedies by filing the instant motion after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).

In view of the illegal and inhumane conditions Defendant has endured for over one year, extraordinary and compelling reasons warrant the reduction of his sentence.

The Eighth Amendment is supposed to protect prisoners against cruel and unusual punishment during confinement. U.S. Const. amend. VIII; Rhodes v. Chapman, 452 U.S. 337, 345 (1981) ("It is unquestioned that confinement in prison ... is a form of punishment subject to scrutiny under the Eighth Amendment standards.") The Supreme Court has distinguished between two kinds of official conduct: (1) that which is part of the punishment formally imposed for a crime, and (2) that which does not purport to be punishment, such as conditions of confinement and medical care. Wilson v. Seiter, 501 U.S. 294, 300 (1991). Unconstitutional official conduct that is not

part of the formal penalty for a crime is demonstrated by (1) a "sufficiently serious" deprivation, and (2) that officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298.

Defendant has been deprived "the minimal civilized measures of life's necessities." Id. For example, he has been made to go long periods of time locked in a cell, sometimes without access to a shower, clean clothes and fresh air. See Darnell v. Pineiro, 849 F.3d 17, 23-26 (2d Cir. 2017). Spending one year in a solitary confinement status — most of which without being able to communicate with family, participate in rehabilitative programs, exercise, or even breath fresh air — all of which inflicted by the government knowing the negative psychological effects — does not purport to the type of legal punishment to which Defendant was sentenced. Indeed, subjectively, for Defendant, one year under such conditions has been the equivalent of five years under legal conditions.

Another compelling reason is that Defendant was actually given COVID-19 by a staff member. Staff's refusal to wear a mask resulted in Defendant contracting this deadly virus which not only led to more than two weeks of physical and mental suffering, but he now also faces a substantial risk of future problems to his physical and mental health. See Helling v. McKinney, 509 U.S. 25, 32 (1993) ("deliberate indifference" that poses an unreasonable risk to future health violates the Eighth Amendment).

Considering, as it must, the factors of § 3553(a), the Court will find further support for granting the instant motion. Defendant, who was arrested before turning 18, has proven himself to not only be rehabilitated, but also to be someone who poses

no threat to society. This is clearly seen by his consistent efforts toward rehabilitation. Moreover, that he began these efforts ten years ago—when there was no statutory incentive of possible sentence reduction—shows that such efforts have been as sincere as fruitful. See United States v. Muchow, 924 F.3d 272, 275 (6th Cir. 2019)

Finally, another § 3553(a) factor warranting a reduction is based on "the need to avoid unwarranted sentencing disparities." 18 U.S.C. § 3553(a)(6). Here, the Court need look no further than this case. For clearly there is a marked, disparate difference between a 264-month sentence and a 264-month sentence plus COVID-19.

D. Conclusion

Naturally, when Defendant was sentenced it was not anticipated that the term would be so dangerous and inhumane. By any measure, receiving a deadly virus was not intended by the Court. And that is precisely what happened, after Defendant was made to serve nearly one year under illegal conditions. Based on such "extraordinary and compelling" reasons, Defendant asks the Court to reduce his sentence in the interests of justice and fairness.

Dated: 2-28-21

Respectfully submitted,

*Marco Serrano*
Marco Antonio Serrano
Reg. No. 88783-008
FCI Victorville II
Post Office Box 3850
Adelanto, CA 92301

Defendant Appearing Pro Se

6